## Illinois Central Railroad, Appellee, v. N. K. Goodrich, Appellant.

## Gen. No. 15,840.

COMMON CARRIERS—*right to recover for unloading freight.* If freight is unloaded by the carrier for the consignee at unusual hours and in a special way so as to convenience the consignee and save him expense, imposing special expense upon the carrier, it has a right to charge compensation for such services in addition to the freight rates if it had given notice to the consignee that when such services were performed extra compensation would be charged.

Appeal from the County Court of Cook county; the Hon. WILLIAM C. DeWOLF, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 4, 1911.

DUNCOMBE & EVANS, for appellant.

VERNON W. FOSTER and CALHOUN, LYFORD & SHEEAN, for appellee; JOHN G. DRENNAN, of counsel.

MR. JUSTICE GRAVES delivered the opinion of the court.

This suit was begun by appellee to recover from appellant pay for unloading 350 carloads of fruit consigned to him in April, May, June and July, 1908. It is stipulated that appellee is an Illinois railroad corporation doing an extensive business in Illinois and other states in carrying fruit and vegetables to Chicago, where it maintains terminals, yards, fruit houses

and platforms for the handling and distribution of such produce; that appellant is a general consignee in Chicago of cars loaded with packages of fruit and vegetables belonging to various producers at the points where the shipments originate, whose individual shipments are not sufficient to make a carload, who have formed associations for the purpose of consolidating their shipments into carload lots and thereby procuring the benefit of carload rates; that these cars so loaded are called "Granger" or "Consolidated" cars; that the packages of which these carloads are composed are marked for various commission merchants in Chicago, who are finally to receive them; that these carloads are shipped in the name of the association as consignor, and are consigned to one person in Chicago; that 350 of such cars were consigned to appellant in his capacity of general consignee, and were delivered by appellee at its yards at the foot of South Water street, Chicago, in April, May, June and July, 1908, and the freight, at carload rates, was paid by appellant; that upon the arrival of these cars at Chicago, they were unloaded by appellee onto its fruit platform and assorted into lots in accordance with the names of commission merchants marked on the packages; that such commission merchants removed such packages from the platform; that for so unloading these cars appellee charged one cent per hundred pounds and rendered bills therefor to appellant, who refused to pay the same, and denies the right of appellee to make the charges; that prior to 1902 such carloads of freight were unloaded by the consignees; that from 1902 to January 1, 1908, appellee unloaded such cars and made no charges therefor; that since January 1, 1908, appellee has unloaded such cars and charged the consignees therefor in accordance with a notice to them that appellee would make such charge after January 1, 1908; that "as distinguished from these 'Granger' or 'Consolidated' shipments are:

1. Less than carload shipments, which are ship-ments that are made up of goods belonging to various shippers and consigned to various consignees, there being no general consignee; and

2. Carload shipments in which the entire shipment is owned by and consigned to a single consignee."

The proof outside of the stipulation of facts, the substance of which is already stated, tends to show that these cars were unloaded by appellee between 5 and 7 o'clock in the morning, three of its employes being engaged in unloading each car, two of whom carry out the packages and the other one sorting them according to ''the carding;'' that one cent per hundred pounds is a fair and reasonable charge for such ser-vices; that the fruit platform is about 1,600 feet long and accommodates about thirty-eight cars; that there are team tracks and other facilities for unloading cars; that at one time, when cars consigned to appellant had been left by mistake at the team track he called the at-tention of the foreman of appellee in unloading and loading cars at its station at South Water street, and told him the cars would have to go to the fruit plat-form. It was admitted during the trial that the cars in question were put by appellee at a place satisfac-tory and convenient to appellant for unloading.

The judgment in the court below was for appellee in the sum of $708.13.

Appellant has not urged in this court that the judg-ment is excessive, or that it is not supported by the evidence, *provided* appellee had a right to make a charge for the service performed in unloading the car, in excess of the regular published carload freight rate demanded and received by appellee for transporting the cars from the place where they were loaded to the place of their destination, but strenuously insists that appellee had no right to make such extra charge.

What a common carrier is bound to do in return for the payment of freight charges is of course a matter

Ill. Cen. R. R. v. Goodrich, 163 Ill. App. 268.

of contract, either expressed or implied.

In the case at bar the record shows that the 350 cars in question were delivered by appellee at its fruit platform on South Water street, Chicago, and there unloaded, and the packages sorted by servants of appellee; that regular carload freight rates were charged by appellee to appellant, and paid by him; that an extra one cent per hundred pounds of freight was charged by appellee to apellant for unloading and sorting the freight which appellant refused to pay. Whether the service for which the extra compensation is charged was part of the service impliedly undertaken by appellee to be performed in consideration of the amount paid as freight is the question here presented for determination.

Whether it would be the duty of appellee in any event, without an extra charge to unload freight shipped as this was, is, in the view we take of this case, unnecessary to decide. If it would be its duty so to do, that duty would be fully performed, if, within a reasonable time and during regular working hours, it was performed by unloading the freight at some place designated by either the consignor or consignee, or, if no place was so designated, then at the regular place provided by appellee for so doing, convenient for the consignee to get the same, and where the same would be safe from loss or damage.

Clearly no duty can be implied to unload freight in the night time, or between five and six, or even seven, o'clock in the morning, or to sort out the freight into separate piles according to the names on the packages, indicating to whom the consignee should eventually distribute the same, as such service is an extra or special service, and was performed in this case by appellee for the accommodation and benefit of the consignee, thereby saving him expense and entailing additional expense to the railroad. Such service has never been held to be part of the duty of a railroad

acting as a common carrier.    The extra compensation sued for in this case was charged for this kind of special service, after notice to consignee that when it was performed an extra charge therefor would be made.    The appellee in our opinion had the right to make the charge sued for and was entitled to the judgment it recovered.

The judgment is, therefore, affirmed.

*Judgment affirmed.*